# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: July 31, 2014

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | **PUBLISHED** |
| TIEU BINH LE, | * | |
| | * | No. 07-895V |
| Petitioner, | * | |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees; Contested |
| AND HUMAN SERVICES, | * | Attorney's Hourly Rate; |
| | * | Excessive or Duplicative Entries; |
| Respondent. | * | Local Hourly Rate for Dallas, Texas. |
| * * * * * * * * * * * * * * | * | |

<u>Brian R. Arnold</u>, Esq., Law Offices of Brian R. Arnold, Dallas, Texas, for petitioner.
<u>Jennifer L. Reynaud</u>, Esq., U.S. Department of Justice, Washington, D.C., for respondent.

## **DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

**Gowen**, Special Master:

On December 26, 2007, Tieu Binh Le ("petitioner") filed a Petition under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq. ("the Program").[2] The Petition alleged that an influenza ("flu") vaccination petitioner received on December 30, 2004, caused her to develop Guillain-Barre syndrome ("GBS"). Petition at 2-3. Later, petitioner and respondent filed a stipulation notifying the court that they had settled their dispute and requesting petitioner be awarded compensation. Stipulation for Award, filed Oct. 2, 2012 Petitioner has since requested attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees and Costs ("Motion"). The undersigned finds that she is entitled to an award of reasonable attorneys' fees and costs.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  Otherwise, the entire decision will be available to the public.  <u>Id.</u>

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1-34 (2006) ("Vaccine Act").  All citations in this order to individual sections of the Act are to 42 U.S.C. §300aa.

1

I.   **Procedural History**

The case was initially assigned to Special Master Christian Moran on December 26, 2007, subsequently to Special Master Daria Zane, on March 14, 2011, and finally to Special Master Thomas L. Gowen on March 6, 2014.

The Petition, filed on December 26, 2007, alleges that petitioner suffered from GBS as a result of the flu vaccination. Petition at 1. Along with the Petition, petitioner filed an affidavit of her attorney, Mr. Brian R. Arnold; her immunization records; petitioner's affidavit; and medical records from petitioner's doctors (Dr. Kalpana Prasad, Dr. D. William Davidson, and Dr. Manoher Gurru). Petitioner's Exhibits ("Pet. Ex(s).") 1-7. Petitioner then filed additional medical records, on February 11, 2008, and February 13, 2009, including more records from several of petitioner's doctors (Dr. Charles Tuen, Dr. Jay Meng, and Dr. Stella L. Kwong). Pet. Exs. 8-14. In addition, on April 13, 2009, petitioner filed her social security records and medical records by Dr. William L. Fausett. Pet. Exs. 15-16. Finally, petitioner submitted a supplemental affidavit and an affidavit by her husband. Pet. Exs. 17-18. The remaining exhibits, filed between August 17, 2009 and May 9, 2011, were Status Reports and a Notice of Election to remain in the program. Pet. Exs. 19-25.

On October 2, 2012, following settlement discussions, the parties filed a stipulation notifying the court that they had settled their dispute and requesting petitioner be awarded compensation. Stipulation for Award, filed Oct. 2, 2012. A decision was entered, on October 3, 2012, consistent with the parties' Stipulation. Decision, filed Oct. 3, 2012. Subsequently, judgment was entered on November 6, 2012, and petitioner was awarded compensation in the amount of $205,000.00. Judgment, entered November 6, 2012.

On July 18, 2013, petitioner filed a Motion for Attorneys' Fees and Costs to reimburse her counsel of record, Mr. Arnold, for the hours and costs he expended on petitioner's behalf.[3] Motion at 1. Petitioner requests a total of $50,407.00, in attorneys' fees and paralegal fees, and $1,724.52 in costs, for a total award of $52,131.52. Motion at 4.

---

[3] Pursuant to Vaccine Rule 13, petitioner's attorney should file an application for attorneys' fees and costs no later than 180 days after the entry of judgment, or alternatively file a request for extension of this time period before the deadline expires. In this case, judgment was entered November 6, 2012 and petitioner's Motion for Attorneys' Fees was due May 6, 2013. Judgment, filed Nov. 6, 2012. Petitioner's attorney filed his Motion for Attorneys' Fees, on July 18, 2013, outside of this deadline without requesting an extension. Motion, filed July 18, 2013.

Notwithstanding the untimely filing of petitioner's Motion for attorneys' fees and costs, the undersigned finds that it is within his discretion to evaluate the Motion on its merits. See Gonzalez v Sec'y of Health and Human Servs., No. 90-2331V, 1997 WL 438762 (Fed. Cl. Spec. Mstr. July 18, 1997) (granting attorneys' fees and costs, based on an exercise of discretion, even though the fees application was not filed until three years after the application deadline).

Respondent raises five objections to the requested attorneys' fees in this case, on the grounds that the amounts petitioner requested in the Motion are unreasonable.[4] Respondent does not object to an award of reasonable costs. Respondent's Response to Petitioner's Motion and Request for Attorneys' Fees and Costs ("Resp."), filed August 15, 2013, at 1, fn. 1, 5-10. Specifically, respondent objects that petitioner's attorney requested reimbursement for an hourly rate that was unreasonable. Resp. at 6-7. Also, respondent argues that petitioner's attorney billed an unreasonable number of hours for preparing status reports and routine filings. Id. at 6-9. Respondent argues to petitioner's attorney and paralegals billing for non-compensable administrative tasks. Id. at 6-7. Respondent further argues that the number of hours petitioner's attorney billed for collecting, reviewing and filing medical records was excessive and duplicative, as was the number of hours petitioner's attorney billed for preparing a demand. Id. at 7, 10.

Petitioner filed a reply to respondent's objections. Petitioner's Reply to Respondent's Response to Application for Attorneys' Fees and Costs ("Reply"), filed September 20, 2013. Petitioner's attorney asserts that he demonstrated a reasonable basis for the claim, that his hourly rate was reasonable in the prevailing market of Dallas, Texas, and that the amount requested by petitioner's attorney was justified. Reply at 1-10. Petitioner's attorney objects to respondent's characterizations of his billing requests as excessive and argues this case was unique and time consuming, due to a language barrier between petitioner and himself, and due to his difficulty in obtaining appropriate documentation required by the court from petitioner, her doctors, and the Internal Revenue Service. Id. Petitioner's attorney provided his resume and three additional affidavits from Dallas, Texas-based attorneys as evidence that his requested hourly rate was reasonable in his local market of Dallas-Fort Worth, Texas. Id. at Exs. A-B.

The matter is now ripe for adjudication.

## II. Analysis

### A. Applicable Legal Standards

Petitioner "bears the burden of establishing the hours expended." Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Reasonable attorneys' fees are determined by applying the lodestar method. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Under this method, a court first determines an "initial estimate [of fees] . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. Then, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). The requirement that attorneys' fees

---

[4] In her Response to petitioner's Motion, respondent never specifically objects to the hourly rate billed by petitioner's paralegal staff, but merely objects to administrative tasks being billed at paralegal rates. Resp. at 5-10.

be reasonable applies also to costs. Perreira, 27 Fed. Cl. at 34 ("Not only must any request for attorneys' fees be reasonable, so must any request for reimbursement of costs").

In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorneys' fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### B. Reasonable Attorneys' Fees and Costs

Petitioner's motion will be discussed in the order of respondent's objections and petitioner's replies to those objections.

### 1. The hourly rate of $295.00 sought for Mr. Arnold

Petitioner seeks an hourly rate of $295 for her attorney, Mr. Arnold, for the hours expended from 2006 to 2013, and an hourly rate of $95.00 for his paralegal staff. Motion at 4. Petitioner claims that the hourly rate is reasonable based on the prevailing market rate in Dallas, Texas, and "in light of the experience of counsel, the circumstances surrounding this matter and the time, efforts and expenses required to pursue the same." Id.

Respondent contends that no support has been provided for the reasonableness of the local hourly rate sought by petitioner, except for counsel's own affidavit. Resp. at 6-7. Respondent does not assert what a reasonable hourly rate for Mr. Arnold should be. Id.

In her reply, petitioner maintains that an hourly rate of $295 is justified because Mr. Arnold has litigated numerous personal injury and vaccine compensation claims and has been in practice for over 29 years. Reply at 3-4. Petitioner attached three affidavits from Dallas based lawyers who maintained that an hourly rate of $295 for attorneys and $95 for paralegals "fell within the lower to middle market rate" for the Dallas-Fort Worth metropolitan area. Id. at Ex. B.

A reasonable hourly rate "is defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 896). Determining an attorneys' reasonable hourly rate of compensation under the lodestar analysis involves three steps. See Avera 515 F.3d at 1353. First, the hourly rate in the attorney's local area must be established. Id. Second, the hourly rate for attorneys in the forum, Washington D.C., must be established. Id. Third, these two rates must be compared to determine whether there is a very significant difference in compensation that triggers the application of the Davis exception found in Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). Id. The exception applies when the majority of an attorney's work is completed outside the District of Columbia and there is a "very significant

4

difference" favoring the forum hourly rate, in which case the rate from the attorney's geographic location is selected over the forum rate. Id. at 1349. A special master's determination of what constitutes a "very significant difference" is an exercise of discretion. Hall v. Sec'y of Health & Human Servs., 640 F.3d 135 (Fed. Cir. 2011).

Here, Mr. Arnold's work was performed exclusively outside of the forum, so the evaluation of his hourly rate must take into account differences between the forum and the metropolitan area in which he works – Dallas-Fort Worth.

### a. Reasonable Hourly Rate in the Dallas-Fort Worth Metropolitan Area

Petitioners have the burden to demonstrate that the hourly rate requested is reasonable. See Blum v. Stenson, 489 U.S. 87, 95 n.11 (1989) ( "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). Petitioner submitted Mr. Arnold's resume to support the statements made in Mr. Arnold's affidavit; namely, that he is a Dallas-Fort Worth-based attorney with over 29 years of civil litigation experience, who routinely brings vaccine compensation claims in the Vaccine Program. Motion at Exhibit B; Reply at Exhibit A. Additionally, petitioner presented evidence in support of Mr. Arnold's proposed $295 hourly rate in the form of three affidavits from Dallas-Fort Worth attorneys stating the hourly rates that they charge, the number of years they have been in practice, and the types of relevant litigation they practice.[5] Id. at Exhibit B. All three lawyers certify that Mr. Arnold's requested hourly rate is within the "lower to middle market rate for attorneys handling litigation of cases" in Dallas-Fort Worth. Id.

In at least one other case, a special master determined that an hourly rate comparable to the rate sought by Mr. Arnold was reasonable in Dallas-Fort Worth. Whitener v. Sec'y of Health & Human Servs., No. 06-895V, 2011 WL 1467919.  In Whitener, the special master considered counsel's affidavit as evidence of the local rate, where petitioner's attorney was requesting $300 for services performed from 2005 to 2010. Id.  Petitioner's attorney (who had over 29 years of experience in Dallas and had handled four vaccine cases in the Vaccine Program) was awarded a $300 hourly rate for 2005 to 2010.[6] Id.

Based on the above, I find that Mr. Arnold's requested hourly rate of $295 is reasonable for a Dallas-Fort Worth, Texas-based lawyer with Mr. Arnold's experience.

### b. Reasonable Hourly Rate in Washington, D.C.

---

[5] See Reply at Ex. B (Affidavits of A. Ilene Smoger (23 years of experience, practices in Dallas-Fort Worth, Texas, charges $350 per hour for similar civil litigation in personal injury cases), B. Robert Kraft (43 years of experience, practices in Dallas-Fort Worth, Texas, charges $500 per hour for similar civil litigation in personal injury cases), and C. Harry J. Fisk (29 years of experience, practices in Dallas-Fort Worth, Texas, charges $295 for similar civil litigation in personal injury cases)).

[6]  The special master found this rate to be "commensurate with the forum rate," and thus did not make a specific determination on the local rate in Dallas-Fort Worth, Texas. Whitener, 2011 WL 1467919, at 6-7.

Determining a reasonable hourly rate for attorneys is generally discretionary; there is relatively little guidance about how to determine the prevailing market rate for similar services. However, a recent decision in this court - Barrett v. Sec'y of Health & Human Servs., No. 09-389V, 2014 WL 2505689 (Fed. Cl. Spec. Mstr. May 14, 2014) – proves informative for determining an appropriate forum rate range adjusted for inflation.

As noted in Barrett,

> Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979 (Fed. Cl. Spec. Mstr. June 12, 2009) and Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009), provide a helpful yardstick [for determining a forum rate range]. In Masias, a special master found that a reasonable rate for experienced attorneys from Washington D.C. who represent petitioners in the Vaccine Program was $250 to $375. Masias, 2009 WL 1838979 at 25. Another special master … found that a reasonable hourly rate for attorneys with more than 20 years of experience and with clear experiences in the Vaccine Program was $275-$360 per hour, depending on the year the work was performed. Rodriguez, 2009 WL 2568468 at 15.

Barrett, 2014 WL 2505689 at *12.

Additionally, the special master in Barrett adjusted these 2009 rates for subsequent inflation by relying on the U.S. Bureau of Labor Statistics Consumer Price Index ("CPI") Inflation Calculator to $275 to $413 for 2014. [7] Barrett, 2014 WL 2505689 at *16.

Like the special master in Barrett, I find the Masias and Rodriguez decisions persuasive, and find a reasonable range for experienced attorneys in the Vaccine Program in Washington D.C. to be $275 to $413 adjusted for inflation. Thus, I find that the $295 per hour fee requested by Mr. Arnold falls within the forum range for Washington D.C. attorneys with Mr. Arnold's level of experience in the Program,

### c. Comparing Local to Forum Rate

As noted above, the forum rates should be used to determine an attorney's hourly rate except when two factors identified in Davis are met. The first factor is "when the bulk of [an attorneys'] work is done" outside of the forum. In this case, this factor is met as it appears that all of Mr. Arnold's work was performed outside of the District of Columbia.

The second factor used to compare local and forum rates requires a "very significant difference in compensation favoring D.C." though what constitutes a "very significant

---

[7] See CPI Inflation Calculator, U.S. Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator.htm (last updated April 15, 2014).

difference" is generally left to the discretion of the special master.[8] In this case, I determine that the Davis exception need not be applied because Mr. Arnold's requested hourly rate of $295 falls well within the forum rate range ($275-$413) for attorneys experienced in the Program. There is no significant difference between the forum rate and the local rate. Given Mr. Arnold's years of experience, reputation, site of practice and skills and compared to attorneys with similar factors, I find Mr. Arnold's requested hourly rate of $295 for work he performed between 2005 and 2012 is reasonable.

### 2. The Number of Hours Expended

Respondent objects to four specific categories of invoice entries as "excessive, duplicative, unnecessary and/or unreasonable." Resp. at 6-10. The four objections are discussed in detail below.

#### a. Respondent Objects that Petitioner's Counsel Billed Attorney/Paralegal Rates for Administrative Tasks

Mr. Arnold requested reimbursement for a total of 10.95 hours on tasks that respondent has identified as "administrative in nature." Resp. at 7.

Respondent contends that "tasks that are secretarial in nature … are not compensable." Id. Petitioner's attorney billed attorney and paralegal hourly rates for 10.95 hours for tasks listed as faxing documents, scanning documents, preparing copies, delivering filings to court, and preparing and mailing letters to doctors, which respondent argues should have been performed by administrative staff. Id. at Table 2. Specifically, respondent objects to petitioner's attorney billing 3.50 hours for drafting a settlement demand package (entry 10/22/2009) because the description includes some administrative tasks listed. Id.; see Doe v. Sec'y of Health & Human Servs., 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010); Anderson v. Sec'y of Health & Human Servs., No. 06-168V, 2007 WL 4527545, at *1-2 (Fed. Cl. Spec. Mstr. Nov. 28, 2007) (reducing the fees sought for administrative tasks performed by attorneys)). In Doe, the special master applied paralegal rates for the time spent by an attorney performing those tasks because these tasks were administrative in nature. Id.

Petitioner's attorney argues that respondent's tabulations as to administrative tasks are misleading. Reply at 4. Petitioner's attorney notes that the time he spent preparing and mailing letters to doctors for their expert opinion was justified, as each letter was "long and in depth" and took time to prepare, as did drafting the settlement demand. Id. at 4-5, 8. However, a review of respondent's table reveals that letter preparation to doctors comprised only 1 hour of

---

[8] See Hall v. Sec'y of Health & Human Servs., No. 02-1052, 2010 WL 1840837 at *10 (Fed. Cl. May 5, 2010) (finding a difference of 59% was "very significant" and giving a chart of decisions on what other special masters have considered a significant difference between the local and forum rates (Sabella v. Sec'y of Health & Human Servs., No. 02-1627, 2008 WL 4426040 (Fed. Cl. Sept. 23, 2008) (46%) Masias, 2009 WL 1838979 (59%), Rodriguez, 2009 WL 2568468 (60%)); see also Barrett, 2014 WL 2505689, at *16 (finding 38% difference between forum and local rate to be significant).

respondent's objections.[9] Resp. at Table 2 (entry 8/28/06). Additionally, drafting the settlement demand comprised 3.50 hours of respondent's objected 10.95 hours. Id. Petitioner offered no further explanation or proof in his reply as to the remaining 6.45 hours faxing, scanning and copying tasks, identified by respondent as administrative. Reply at 4-5.

The undersigned finds that Mr. Arnold should be compensated at his requested rate of $295 for the one hour of letter preparation (entry 8/28/06) and for the 3.50 hours for drafting the settlement demand (entry 10/22/09) (see discussion in subsection d below). See Motion at Ex. A at 2, 16; Resp. at Table 2. In addition, Mr. Arnold requests reimbursement at an attorney rate for 2.95 hours of work, as identified by respondent as administrative in her response at Table 2. Resp. at Table 2. The undersigned hereby adjusts the requested hourly rate from $295 for those administrative tasks to $95 an hour. This results in a reduction of $592.80 from petitioner's requested attorneys' fees.[10]

### b. Respondent Objects that Petitioner's Counsel Billed an Unreasonable Number of Hours for Preparing Status Reports

Mr. Arnold requested reimbursement for 15.35 hours he spent drafting a total of eleven status reports between 2009 and 2012.[11] Motion at Exhibit A.

Respondent objects that petitioner's attorney billed an excessive number of hours (15.35) to draft eleven status reports, given that each status report filed was "virtually unchanged," from the previous report. Resp. at 8. Additionally, respondent notes that one of the status reports that petitioner's attorney billed for was not filed by petitioner's attorney, but was in fact filed by respondent on November 29, 2010. Id. at Table 1. Respondent further objects to the fact that, for each status report filed, petitioner's attorney also filed and billed for a "notice of filing documents" with the court, which respondent notes was redundant and unreasonable. Id. at 8.

---

[9] The remaining tasks, labeled by respondent as administrative, and not addressed in petitioner's Reply to respondent's objections, equal 6.45 hours of time from 2005 – 2012, billed at both paralegal and attorney hourly rates. Resp. at Table 2 (entries 10/7/2005 - 5/9/2012, excluding entries 8/28/2006 and 10/22/2009).

[10] According to respondent's objections in Resp. at Table 2 and petitioner's Motion at Ex. A, Mr. Arnold billed an attorney rate for spending 0.15 hours scanning client narrative to disk on 10/24/07; .10 hours preparing a check for filing fees on 12/17/07; .25 hours preparing an exhibit for delivery on 4/8/09; 1.00 hours traveling to deliver filings to the court on 4/8/09; 0.15 hours preparing fax cover sheet and fax documents on 8/17/09; .15 hours preparing fax cover sheet and fax documents to a trial attorney on 4/26/10; 0.10 hours preparing a check for costs on 10/28/10; 0.25 hours scanning tax returns and emailing opposing counsel on 12/8/10; 0.15 hours preparing fax cover and documents on 3/2/11; 0.50 hours reviewing file and receipts on 10/21/11; and 0.15 hours to prepare fax cover sheet and documents on 4/16/12, for a total of 2.95 hours. All of these entries shall now be billed at $95/ hour for the total 2.67 hours (2.95 is reduced to 2.67 due to a 20% reduction of hours from entry 10/24/07 (see discussion in subsection c), for a total reduction of $592.80 (original Table 2 total, $2,530.25, minus the modified Table 2 total, $1,937.45, equals $592.80). In Table 2, the entries originally billed at the paralegal rate of $95/ hour are left unchanged.

[11] The total number of hours indicated on Resp. at Table 1 (17.80) to prepare eleven status reports is inaccurate; however, the total hours stated in Respondent's brief (15.35) is correct. Resp. at 8; Table 1.

8

Lastly, respondent challenges the 1.45 hours billed to prepare two separate two-line Notices which, respondent argues, is excessive.[12] Id. at 8-9.

Petitioner replies to respondent's objections by countering that each status report he filed was not "simply 'boiler plate'" language, but unique based on new materials he had received before drafting. Reply at 5. He maintains that the difficulty he had in obtaining medical documentation and communicating with his client because of the language barrier between himself, petitioner and petitioner's doctors necessitated that each status report he prepared and filed be unique. Id. Petitioner offered no further explanation for the duplicative preparation and filing of a "Notice of Filing" accompanying each status report or for the two-line Notices. Id. at 5-6. Petitioner concedes any fees billed for documents "prepared by petitioner's counsel [that was] apparently not filed with the Court." Id. at 9.

The undersigned finds the amount of time Mr. Arnold spent preparing petitioner's status reports to be reasonable but reduces his requested number of hours by one hour to reflect that petitioner did not file a status report with the court on November 29, 2010. See Resp. at 8, Table 1 (four entries totaling 1 hour billed on 11/23/2010); see Respondent's Status Report, filed Nov. 29, 2010. This will result in $295.00 of reductions from petitioner's requested attorneys' fees.

### c. Respondent Objects that Petitioner's Counsel Billed Excessive Hours to Collect, Review and File Duplicative Medical Records

Mr. Arnold billed 36.30 hours to collect, review and file petitioner's medical records. Motion at Ex. A. A total of 282 pages of medical records were filed by petitioner's attorney. Id.

Respondent objects to petitioner's attorney billing 36.30 hours for collecting, reviewing and filing approximately 165 pages of medical records, and contends that such an amount of time is unreasonable. Resp. at 9-10. Respondent argues that 120 pages of the 282 pages filed by petitioner were "largely duplicative records contained in petitioner's social security disability file." Id. Respondent offered no further explanation as to her objections, given that petitioner's attorney is only billing for reviewing 165 pages out of a possible 282 pages.

Petitioner replies to respondent's objections by countering that her calculations are misleading. Reply at 6-7. Mr. Arnold maintains that the time he spent collecting, reviewing and filing petitioner's medical records was completely justified given the difficulty he had in obtaining all of the relevant medical records from petitioner and petitioner's doctors (several of whom had moved), he had a significant language barrier between himself and petitioner, petitioner's family and petitioner's doctors, and he had to pursue record collection from treatments petitioner received in her community (such as acupuncture, use of herbs, vitamins, holistic remedies and heat pads, etc.) Id.

The undersigned finds the number of hours required by Mr. Arnold to review and collect petitioner's medical records to be slightly excessive and hereby reduces the number of hours billed for medical record collection and review by 20%. Thus, the total number of hours Mr.

---

[12] The notices are entitled "Notice of Decision Not to Seek Review" and "Notice of Intent to Remain in the Program." Reply at 8-9.

9

Arnold billed at a paralegal rate for medical record collection (12.05) will be reduced by 20%, to 9.64 hours.[13] Additionally, the total number of hours Mr. Arnold billed at an attorney rate for medical record collection (24.25) will be reduced by 20%, to 19.4 hours.[14] This will result in a total reduction of $1,716.70 from Mr. Arnold's requested fees.

### d. Respondent Objects that Petitioner's Counsel Billed Excessive Hours for Preparing Petitioner's Demand

Mr. Arnold, over a two month period from August 3, 2009, to October 23, 2009, billed a total of 15.15 hours on tasks relating to preparing the demand letter to respondent. Motion at Ex. A.

Respondent objects to 11.8 of the 15.15 hours, which were spent reviewing petitioner's file and drafting the demand letter. Resp. at 10. Respondent questions "the reasonableness of the hours that petitioner's attorney spent preparing his demand." Id.

In his reply, petitioner's attorney explains that the preparation of the demand took an enormous amount of time and effort on the part of counsel "due to the difficulties he had communicating with petitioner and her family and obtaining supporting documentation." Reply at 8. Petitioner's attorney further explains that this was because "petitioner spoke and understood very little English," and "did not know how to pursue the gathering and receipt of records." Id. at 9-10.

---

[13] According to respondent's objections in Resp. at Table 3 and petitioner's Motion at Ex. A, Mr. Arnold billed a paralegal rate for spending 2.00 hours on 10/6/05; 2.00 hours on 10/6/05; 0.25 hours on 10/7/05; 0.50 hours on 10/17/05; 0.50 hours on 11/1/05; 0.15 hours on 8/31/06; 0.25 hours on 4/7/07; 0.15 hours on 4/7/07; 0.15 hours on 5/15/07; 0.15 hours on 5/16/07; 0.35 hours on 9/25/07; 0.15 hours on 10/24/07; 3.25 hours on 2/4/08; 1.50 hours on 2/6/08; 0.35 hours on 5/16/08 and 0.50 hours on 2/3/09, for a total of 12.05 hours spent on medical record collection and review. See Resp. at Table 3 for specific description of time spent for each entry.

[14] According to respondent's objections in Resp. at Table 3 and petitioner's Motion at Ex. A, Mr. Arnold billed an attorney rate for spending 0.25 hours on 10/6/05; 0.25 hours on 10/6/05; 0.25 hours on 10/6/0; 0.75 hours on 10/10/05; .50 hours on 10/17/05; 0.15 hours on 10/20/05; 0.75 hours on 10/20/05; 0.25 hours on 10/28/05; 0.15 hours on 11/17/05; 1.00 hours on 8/28/06; 0.25 hours on 8/31/06; 0.15 hours on 9/5/06; 0.50 hours on 9/5/06; 0.25 hours on 2/15/07; 0.25 hours on 2/15/07; 0.15 hours on 4/7/07; 0.25 hours on 4/7/07; 0.25 hours on 4/7/07; 1.50 hours on 8/3/07; 0.10 hours on 9/17/07; 0.75 hours on 9/17/07; 0.25 hours on 9/25/07; 0.15 hours on 11/28/07; 0.45 hours on 12/12/07; 1.50 hours on 12/12/07; 0.15 hours on 12/17/07; 0.25 hours on 12/17/07; 0.25 hours on 12/17/07; 0.45 hours on 2/5/08; 0.15 hours on 2/6/08; 0.25 hours on 2/6/08; 0.10 hours on 4/28/08; 0.25 hours on 4/29/08; 0.15 hours on 4/29/08; 0.15 hours on 4/29/08; 0.50 hours on 5/16/08; 0.25 hours on 5/16/08; 0.15 hours on 5/16/08; 0.25 hours on 5/16/08; 0.25 hours on 1/5/09; 0.25 hours on 2/5/09; 0.50 hours on 2/6/09; 0.15 hours on 2/6/09; 0.10 hours on 2/6/09; 0.15 hours on 2/6/09; 0.25 hours on 2/6/09; 0.35 hours on 2/6/09; 0.35 hours on 3/12/09; 0.25 hours on 3/12/09; 0.25 hours on 3/12/09; 0.15 hours on 3/12/09; 0.25 hours on 3/12/09; 0.25 hours on 3/12/09; 0.25 hours on 3/12/09; 1 hour on 3/12/09; 0.15 hours on 3/12/09; 0.75 hours on 4/7/09; 0.25 hours on 4/8/09; 0.25 hours on 4/8/09; 0.25 hours on 4/8/09; 1.25 hours on 4/8/09; 0.25 hours on 4/23/09; 0.25 hours on 5/7/09; 0.25 hours on 5/8/09; 0.25 hours on 5/8/09; 0.25 hours on 7/10/09; 0.25 hours on 7/10/09; 0.25 hours on 7/11/09; and 0.50 hours on 7/11/09, for a total of 24.25 hours spent on medical record collection and review. See Resp. at Table 3 for specific description of time spent for each entry.

The undersigned finds that the careful preparation of a demand letter is crucial to the successful resolution of a case. Respondent's objection to Mr. Arnold's requested hours for this task is unreasonable and thus no reduction in fees is necessary. Mr. Arnold shall be compensated for the total 15.15 hours billed for preparing the demand letter to respondent.

### 3. Lodestar Calculations

Attorneys' fees and costs are awarded as follows:

| | | |
|---|---|---|
| **3. Brian R. Arnold** | **152.42 hrs @ $295 an hour**[15]: $ | **$44,963.90** |
| | **29.88 hrs @ $ 95 an hour:** $ | **$2,838.60** |
| | **Total Attorneys' Fees Awarded:** $ | **$47,802.50** |
| | **Total Attorneys' Fees Requested:** $ | **$50,407.00** |
| | **Difference (Reduction):** $ | **$2,604.50** |
| | **Total Amount of Costs Awarded:** $ | **$1,724.52** |
| | **Total Amount of Costs Requested:** $ | **$1,724.52** |
| | **Difference (Reduction):** $ | **$0** |
| **Total Amount of Fees and Costs Awarded:** | $ | **$49,527.02** |
| **Total Reduction from Petitioner's Motion:** | $ | **$2,604.50** |

Lastly, special masters may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Avera at 1348. In the absence of sufficient proof, special masters may rely on their own experience and use their discretion to establish a reasonable fee. Id. After reviewing both petitioner's and respondent's arguments, I find that I need not further adjust the total amount of fees and costs awarded.

### III. Conclusion

A total of $2,604.50, is reduced from petitioner's fee application. Accordingly, a total of $47,802.50,[16] shall be awarded in the form of a check jointly payable to petitioner, Tieu Binh Le and petitioner's counsel, Brian R. Arnold, Esq., for petitioner's attorneys' fees and costs.[17]

---

[15] In his request for attorneys' fees, Mr. Arnold appears to have listed hours for which he included "NO CHARGE." Motion at Ex. A. These hours are not included in the total computed hours as they do not affect the value of the total attorneys' fees awarded or the total amount of fees reduced.

[16] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, 42 U.S.C. § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[17] According to petitioner's statement pursuant to General Order No. 9, petitioner has not incurred any costs or out of pocket expenses associated with the Law Offices of Brian R. Arnold, in support of

The clerk of the court **SHALL ENTER JUDGMENT** in accordance with this decision.[18]

**IT IS SO ORDERED.**

S/Thomas L. Gowen
Thomas L. Gowen
Special Master

---

petitioner's vaccine compensation claim. Pet. Statement Pursuant to General Order No. 9, filed Sept. 14, 2012.

[18] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party or jointly filing a notice renouncing the right to seek review.